IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

KELLY JORGENSEN,

      Plaintiff,

         v.                                 Civil Action No. 8:10-cv-00429-AW

UNITED COMMUNICATIONS GROUP
LIMITED PARTNERSHIP et al.,

      Defendants.

## MEMORANDUM OPINION

The instant case sounds in breach of contract. Pending before the Court are the following Motions: (1) Defendants' Motion for Partial Summary Judgment; (2) Plaintiff's Cross-Motion for Partial Summary Judgment; and (3) Plaintiff's Motion for Leave to File a Sur-Reply. The Court has carefully reviewed the record and deems no hearing necessary. For the following reasons, the Court **DENIES** the aforementioned Motions.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The Court excerpts the following factual recitation from its Memorandum Opinion of August 25, 2011, updating it to reflect subsequent developments in the record. This case involves a contract dispute between Mr. Kelly Jorgensen ("Plaintiff") and United Communications Group Limited Partnership ("UCG") and CCB II, LLC ("CCB") ("Defendants"). UCG was the parent company of CCB.[1] Plaintiff and the other two principals of Custom Coding Books, LLC sold the company to CCB on August 31, 2007. On the same day, and as part of the same transaction,

---

[1] On August 1, 2010, CCB sold all of its assets to Ingenix, Inc., terminated its employees, and no longer conducts business.

CCB and Plaintiff entered into a Consulting Agreement ("Consulting Agreement" or "Agreement") under which CCB retained Plaintiff to provide professional services to CCB.

UCG guaranteed CCB's payment obligations to Plaintiff under the Consulting Agreement through the execution of a Guaranty and Covenant of United Communication Group, Limited Partnership ("Guaranty") on August 31, 2007. In exchange for his services, Plaintiff would receive $12,700 per month until CCB achieved a positive gross margin for three consecutive months, at which time the monthly payments would increase to $13,950. The Consulting Agreement also specified Plaintiff's entitlement to annual bonuses, a term bonus, and compensation upon termination. CCB could offset any amounts owed to Plaintiff under the Consulting Agreement by all amounts Plaintiff owed to UCG under the Promissory Note, which the Court discusses below. The Consulting Agreement was for a period of five years unless terminated by either party pursuant to its termination provisions. *See* Doc. No. 25-2 § 8. The agreement would be terminated upon the first to occur of the following:

> (i) upon the death of Jorgensen;
>
> (ii) the Disability of Jorgensen immediately upon notice from the Company to Jorgensen;
>
> (iii) For Cause, immediately upon notice of termination from the Company to Jorgensen, or at such later time as such notice may specify;
>
> (iv) For Good Reason upon not less than 30 days' prior notice of termination from Jorgensen to the Company;
>
> (v) Without Cause, upon not less than 30 days' prior notice of termination from the Company to Jorgensen; or
>
> (vi) Without Good Reason, upon not less than 30 days prior written notice of termination from Jorgensen to the Company.

*Id.* § 8.2(a).

2

Defendants terminated Plaintiff for his allegedly improper use of proprietary information and booking of orders, as well as his alleged creation of a hostile work environment. The booking of orders occurs when sales employees enter customer orders into the sales system. The result of improperly booking orders is an overstatement of the company's financial performance.

The proprietary information at issue consisted of twenty-two lead sheets containing potential customers, which Mr. Gene Kraemer, an employee of CCB, possessed. Mr. Kraemer acquired the lead sheets, which were created in 1999 or 2000, while he was previously employed by CodeCorrect. UCG purchased CodeCorrect in 2004 and subsequently sold it and all of its proprietary leads to Accuro Healthcare Solutions in 2006. As part of the sale, CCB was provided with a list of CodeCorrect customers with whom CCB could not do business. Plaintiff was responsible for maintaining the CodeCorrect customer list.

Defendants received reports of Plaintiff's allegedly improper behavior from Ms. Aimee Mamich, one of Defendants' employees, in October 2009. Ms. Mamich reported the allegations to Ms. Doreen Bieryla, president and chief executive officer of DecisionHealth,[2] through e-mails and phone calls. Ms. Mamich's October 19, 2009 e-mail and attached letter accused Plaintiff of creating a hostile work environment, instructing employees to book orders that were not finalized, and planning to use proprietary information. In response to Ms. Mamich's allegations, Ms. Bieryla conducted an investigation, the reasonableness of which the Parties hotly contest.

Based on Ms. Bieryla's investigation, Defendants determined that retaining Plaintiff was not in their best interest. Subsequently, during an October 29, 2009 meeting at UCG's headquarters, Defendants informed Plaintiff that he was being terminated for cause. Plaintiff did not receive written notice of the termination prior to the meeting or during the meeting.

---

[2] CCB was a wholly owned subsidiary of DecisionHealth, and UCG is the parent company and full owner of DecisionHealth

On November 18, 2009, UCG sent Plaintiff a letter describing the reasons for his termination. The reasons included the following two alleged material breaches of the Consulting Agreement: 1) Plaintiff was party to a plan to use proprietary leads and customer information from another company; and 2) Plaintiff was party to the booking of revenue related to customer orders that had yet been finalized for the purpose of overstating the Company's financial performance. The letter noted that the breaches raised serious concerns about Plaintiff's integrity and were not "curable." The letter stated that Plaintiff's alleged creation of a hostile work environment was an additional factor for the termination. According to the letter, however, this factor was "likely curable."

On August 4, 2010, Plaintiff notified Defendants that, in his opinion, CCB had materially breached the Consulting Agreement and that the Agreement would be terminated unless all of the breaches were cured within thirty days of the letter. Those alleged breaches included Defendants' failure to pay monthly consulting fees; failure to pay annual bonuses; failure to provide thirty days' notice of the alleged material breaches and an opportunity to cure them; and termination of employees and discontinuation of products and services upon which Plaintiff's benefits under the Consulting Agreement were based.

In a letter dated August 12, 2010, Defendants responded by reiterating the reasons for Plaintiff's termination, denying the breaches alleged in Plaintiff's letter, and informing Plaintiff that several provisions of the Agreement were still in effect. On September 13, 2010, Plaintiff provided Defendants notice that, in his estimation, the Consulting Agreement was terminated.

On February 22, 2010, Plaintiff filed a Complaint, which was amended on March 29, 2010, seeking a declaration that Defendants breached the Agreement and that the post-termination covenants in the Consulting Agreement are null and void. *See* Doc. Nos. 1, 8.

Subsequently, on September 20, 2010, Plaintiff moved for partial summary judgment on his breach contract and breach of guaranty claims as to liability, summary judgment on his request for declaratory judgment regarding the post-termination provisions, and summary judgment on Defendants' counterclaim. Defendants filed a motion for summary judgment on all claims on October 27, 2010.

On August 25, 2011, the Court issued a Memorandum Opinion and Order on these cross-motions for summary judgment. Doc. No. 43. The Court denied Plaintiff's Partial Motion for Summary Judgment as to his breach of contract and breach of guaranty claims. With respect to these claims, the Court held that the Agreement's for-cause termination provision was not exclusive, meaning that Defendants reserved the power to terminate Plaintiff for just causes beyond those listed in the Agreement. Consequently, the Court concluded that Defendants retained the common law right to terminate the Agreement for just cause constituting material breach.

The Court also considered whether Plaintiff materially breached the Agreement, thereby justifying his termination. Defendants argued that Plaintiff materially breached the Agreement by (1) improperly booking orders and/or (2) misusing—or planning to misuse—confidential lead sheets. The Court held that genuine disputes of material fact precluded summary judgment on this issue.[3] However, the Court determined that no genuine dispute of material fact existed regarding whether Plaintiff had created a hostile work environment because Defendants had stated that Plaintiff's alleged hostile behavior was "likely curable."

After the Court issued its Opinion, the Parties conducted additional discovery. On March 23, 2012, Defendants filed a Motion for Partial Summary Judgment. Doc. No. 55. In their

---

[3] The Court issued other rulings which, except as otherwise indicated, are irrelevant to the instant Opinion.

Motion for Partial Summary Judgment, Defendants make the twofold argument that the Court should (1) declare that Defendants terminated Plaintiff on October 29, 2009 and (2) limit Plaintiff's damages to the time period ending thirty days thereafter.

To support this argument, Defendants point to section 8.2 of the Agreement. In pertinent part, it provides that the Agreement shall be terminated "[w]ithout cause, upon not less than 30 days' prior notice of termination from the Company to Jorgensen." Doc. No. 25-2, § 8.2. Defendants also highlight deposition testimony from Plaintiff in which he states that, based on an October 29, 2009 meeting with Defendants, he understood that they were terminating him.

Defendants proceed to argue that damages for defective or improper termination of a contract terminable on notice are limited to what the plaintiff would have received had such procedures been followed. In other words, because of the term empowering Defendants to terminate Plaintiff without cause on thirty days' notice, Plaintiff's damages are limited to what he would have been entitled to had Defendants given him notice of his termination on October 29, 2009 and terminated him thirty days later. Defendants cite a handful of cases purporting to prove this proposition.

On April 9, 2012, Plaintiff filed a dual Response in Opposition/Cross-Motion for Partial Summary Judgment. Doc. No. 56. Plaintiff contends that the cases Defendants cite are distinguishable. Plaintiff also asserts that Defendants' reliance on the "without cause" provision to limit damages is inconsistent with their argument that they terminated him with cause, going so far as to argue that the Court should judicially estop Defendants from making this argument.

Additionally, Plaintiff contends that the discovery that the Parties conducted after the Court issued its Opinion entitles him to summary judgment on the question whether he materially breached the Agreement through his allegedly improper booking of orders and alleged

misuse of the lead sheets. Plaintiff argues that no reasonable juror could so conclude because the facts compel the conclusion that Defendants' decision to terminate him for cause was not supported by an objectively reasonable investigation. Plaintiff also appears to argue that he is entitled to an adverse inference based on Defendants' alleged spoliation of evidence through their apparent destruction of the lead sheets.

On June 29, 2012, Plaintiff filed a Motion for Leave to File Sur-Reply with respect to his Motion for Partial Summary Judgment. Doc. No. 63. Defendants oppose this Motion. The Parties have completed briefing on all outstanding Motions.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must come forward with affidavits or similar evidence to show that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A disputed fact presents a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Material disputes are those that "might affect the outcome of the suit under the governing law." *Id.*

Although the Court should believe the evidence of the nonmoving party and draw all justifiable inferences in his or her favor, the nonmoving party cannot create a genuine dispute of

material fact "through mere speculation or the building of one inference upon another." *See Beal v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Further, if a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). Finally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Firefighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

**III.    LEGAL ANALYSIS**

**A.    Clarification of the Court's Prior Opinion**

The Court generally held in its prior Opinion that a genuine dispute existed concerning whether Defendants materially breached the Agreement by terminating Plaintiff. The Court went on to specify that "there is a genuine dispute of material fact as to whether Defendant materially breached the consulting agreement by failing to give Plaintiff 30 days' notice and an opportunity to cure Plaintiff's alleged breach of the agreement." Doc. No. 43 at 11. In reaching this conclusion, the Court stated that "the termination provision does not exclude the common law right to terminate the contract for a material breach that is not curable." *Id.* at 10.

In retrospect, the Court feels that it slightly misstated its holding and the underlying legal principles. As indicated, the Court determined that the Agreement's for-cause termination provision was not exclusive. This means that, even though Defendants did not adhere to the procedures of the for-cause provision when terminating Plaintiff, they could still terminate Plaintiff based on other just cause.

Therefore, the issue is whether the allegations of improperly booking the orders, misusing the lead sheets, and creating a hostile work environment constituted just cause. In Maryland,

most negotiated contracts impose an implied duty of good faith and fairing dealing in their performance. *See, e.g.*, *Suburban Hosp., Inc. v. Dwiggins*, 596 A.2d 1069, 1076–77 (Md. 1991). Thus, Defendants must show that their decision to terminate Plaintiff comported with the duty of good faith and fair dealing.

As the Court indicated in its prior Opinion, this requires Defendants to show that they had an objectively reasonable basis for their conclusion that Plaintiff had engaged in the alleged misconduct.  Accordingly, contrary to what the Court suggested in its prior Opinion, the issue is not whether Defendants materially breached the consulting agreement by failing to give Plaintiff 30 days' notice and an opportunity to cure his alleged breach. The Court held that Defendants' decision to terminate Plaintiff was not, as a matter of law, predicated on any of the Agreement's for-cause notice provisions. Hence, the issue of notice is not of central relevance.

Nor is the question whether Defendants gave Plaintiff an opportunity to cure the alleged breaches particularly relevant. The Court based this statement on its observation that, at common law, a party to a contract may terminate the contract for material breaches that are incurable. Although this is generally a correct statement of the law, the Court noted later in its prior Opinion that some breaches are per se incurable. *See* Doc. No. 43 at 13. In fact, the Court concluded as a matter of law that, if substantiated, Defendants' allegations would constitute incurable just cause. Therefore, the fundamental question is not whether Defendants materially breached the Agreement by failing to give Plaintiff an opportunity to cure. Instead, the key question is whether Defendants had an objectively reasonable basis to conclude that Plaintiff had engaged in the alleged misconduct. Although the issue of whether Plaintiff could have corrected his alleged misconduct may potentially inform this question, it is certainly not dispositive.

**B.**     **Defendants' Motion for Partial Summary Judgment**

Defendants Motion for Partial Summary Judgment Proceeds in two steps. First, Defendants ask the Court to declare that they terminated Plaintiff on October 29, 2009. Plaintiff does not respond to Defendants' assertion that they terminated him on this date. Furthermore, the Court stated in its prior Opinion that Defendants terminated the Agreement on this date. Therefore, the Court finds that, at least from their vantage point, Defendants terminated the Agreement on October 29, 2009.[4]

Now the Court must address the issue of damages. Based on his theory that Defendants improperly terminated the Agreement, Plaintiff essentially argues that he is entitled to the compensation he would have earned had he provided consulting services up to September 13 2010, the date on which he purported to terminate the Agreement.

The measure of damages for breach of contract is addressed generally in Restatement (Second) Contracts, § 347 (1981) which recognizes that

> the injured party has a right to damages based on his expectation interest as measured by
>
> > (a) the loss in the value to him of the other party's performance caused by its failure or deficiency, plus
> >
> > (b) any other loss, including incidental or consequential loss, caused by the breach, less
> >
> > (c) any cost or other loss that he has avoided by not having to perform.

*David Sloane, Inc. v. Stanley G. House & Assocs. Inc.*, 532 A.2d 694, 697 (Md. 1987).

---

[4] This is not to suggest that the Agreement was not in force on this date. As Plaintiff asserts that Defendants unlawfully terminated the Agreement, there is a genuine dispute whether the Agreement was still in force on this date. The Court recognized as much in its prior Opinion. *See* Doc. No. 43 at 18.

Defendants urge the Court to disregard the longstanding principle that the proper measure of damages for breach of contract is the loss in value to the injured party caused by the breaching party's failure to perform. Rather, Defendants rely on a line of cases purportedly proposing that damages are limited to Plaintiff's damages had Defendants terminated him pursuant to the without-cause provision requiring thirty days' notice. In view of this provision, Defendants assert that Plaintiff's expectation interest could not reasonably have exceeded this amount.

The Court has carefully reviewed the cases Defendants cite to support this argument and, though not without force, concludes that they are inapposite. Defendants rely on a trio of Fourth Circuit cases, one of which has largely been overruled and another of which is unpublished: *Trimed, Inc. v. Sherwood Med. Co.*, 977 F.2d 885, 891–93 (4th Cir. 1992); *Enterprise Wheel & Car Corp. v. United Steelworkers of Am.*, 269 F.2d 327, 330–31 (4th Cir. 1959), *rev'd in part*, 363 U.S. 593 (1960); *Strategic Outsourcing, Inc. v. Cont'l Cas. Co.*, 274 Fed. App'x 228, 235 (4th Cir. 2008).

*Trimed* is inapposite for three reasons. First, the court was applying New York law. *See* 977 F.2d at 893. Second, the court was reviewing the sufficiency of a jury's verdict and, therefore, the posture of the case was different. *See id.* at 888, 891–92. Third, the jury awarded damages for breach based on a party's failure to give notice pursuant to a contract provision enabling the breaching party to terminate the contract without cause upon six-months' notice. *See id.* at 892. Here, the question is not whether Defendants breached the Agreement by failing to give Plaintiff notice of his termination. Rather, Plaintiff's breach of contract claim is predicated on the theory that Defendants violated the duty of good faith and fair dealing by terminating him without having an objectively reasonable basis to do so. Therefore, *Trimed* is distinguishable.

11

*Enterprise Wheel* is inapposite as it involved a court's authority under the LMRA to enforce the award of an arbitrator to whom a labor dispute had been referred. *See* 269 F.2d at 328. Furthermore, the court's isolated statement that "damages for wrongful discharge are limited to the notice period since at the expiration of the period the right of the employer to discharge the employee is unrestricted" is an obiter dictum that evidently only two courts have cited in more than fifty years. This is unsurprising considering that the Supreme Court overruled the *Enterprise Wheel* court's conclusion that the wrongfully discharged laborers had no right to damages for loss of time under the contract after its expiration. *See United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598–99 (1960). Although the Supreme Court did not formally censure the dictum that damages for wrongful discharge are limited to the notice period, the Circuit Court relied on this statement to support its decision that the district court had erred in enforcing the arbitrator's decision. Accordingly, *Enterprise Wheel* is inapposite.[5]

One can also distinguish the pair of Maryland cases that Defendants cite, neither of which is by the Court of Appeals. *Storetrax.com, Inc. v. Gurland*, 895 A.2d 355, 368 (Md. Ct. Spec. App. 2006); *Cottman v. State*, *Dep't of Natural Res.*, 443 A.2d 638, 640 (Md. Ct. Spec. App. 1982). The *Storetrax* court simply stated that the nonbreaching party's damages are limited to his salary for the notice period where (1) the breach is from the failure to provide written notice of the termination and (2) the termination is pursuant to an express contractual provision allowing termination for cause. *See* 895 A.2d at 368. In this case, however, the alleged breach does not arise from Defendants' failure to provide written notice of the termination, but rather, the alleged failure to conduct a reasonable investigation before terminating Plaintiff. Furthermore, although

---

[5] The final Fourth Circuit case Defendants cite, *Strategic Outsourcing*, is inapposite because the court was applying North Carolina law. *See* 274 Fed. App'x at 234–35. Furthermore, *Strategic Outsourcing* is an unpublished, per curiam opinion.

Defendants argue that they had cause to terminate Plaintiff, Defendants do not base their decision on an express for-cause provision. Hence, *Storetrax* is distinguishable.

*Cottman* does not compel a contrary conclusion either. *Cottman* considered whether the trial court erred in limiting damages to thirty days after the breach of a lease terminable on thirty days' notice *See* 443 A.2d at 639. The termination provision provided that "[t]his lease may be terminated upon **thirty (30) days** written notice by either party." *Id.* at 638 (emphasis added). Here, by contrast, the without-cause termination provision provides that Agreement terminates "upon **not less** than 30 days' prior notice." Doc. No. 25-2, § 8.2 (emphasis added). In other words, as discussed more fully below, the at-issue notice provision supports the inference that the firing could have occurred upon 30 days' notice *or more*.

Additionally, unlike the lease in *Cottman*, the Agreement clearly spells out the compensation and other benefits to which Plaintiff was entitled. Therefore, it is more reasonable for Plaintiff to expect that his benefit of the bargain would extend beyond the minimum notice period than it was for the plaintiff in *Cottman*, whose claimed damages were for the unrealized sale of crops he had yet to even plant. *See* 443 A.2d at 639.

In light of the preceding considerations, the Court sees no sound reason to conclude that, *as a matter of law*, Plaintiff is eligible for damages for only the notice period. As stated, the proper measure of damages for breach of the type of contract at issue is the nonbreaching party's expectation interest as measured by the loss in the value to him that the other party's failure to perform occasioned.  Hence, the essential question is whether Plaintiff reasonably would have believed that he would be entitled to compensation beyond thirty days from the date of any material breach by Plaintiff.

The Court answers this question affirmatively. First of all, it would be reasonable for Plaintiff to expect that Defendants would perform the contract for its stated duration of five years.[6] Unless terminated, the Agreement states that it is for a period of five years. Likewise, the Agreement details compensation that Plaintiff would receive for performing his end of the bargain. Although Defendants could terminate the Agreement under several of its terms, nothing in the Agreement (or in the record) suggests that it would be per se unreasonable for Plaintiff to expect Defendants to otherwise hold up their end of the bargain.

Granted, the Agreement states that it shall terminate where, unlike here, Defendants provide Plaintiff with thirty days' notice. However, on its face, this provision merely enables Defendants to cancel the Agreement after giving notice. It does not follow that, because Defendants had the authority to cancel the contract, they were destined to exercise it. This sort of reasoning resembles the logical fallacy of appeal to possibility.

Minimally, it is equally reasonable to conclude that the Parties would have performed under the Agreement until its natural expiration. After all, the Agreement was otherwise for a term of five years and called on Plaintiff to participate

> in the development, creation and production of the Company's products and offerings . . . . Jorgensen will devote sufficient business time . . . , attention, skill, and energy to the business of the Company . . . , will use his best efforts to promote the success of the Company's business and will cooperate fully, in the advancement of the best interests of the Company Group.

---

[6] Plaintiff likely would not be entitled to damages for this entire period as he voluntarily terminated the Agreement in September 2010.

Doc. No. 25-2 at 15. In short, the Agreement's plain language supports the inference that Plaintiff's continued performance thereunder as a consultant was integral to the success of their business.

Moreover, as noted, the termination provision provides that the Agreement terminates "upon **not less** than 30 days' prior notice." Doc. No. 25-2, § 8.2 (emphasis added). Thus, by its very terms, the provision supports the inference that Defendants could terminate the Agreement after thirty days' prior notice no more than it does the inference that Defendants could terminate the Agreement at any time more than thirty days thereafter (which was up to five years). Furthermore, assuming that the termination provision precluded the recovery of damages incurred beyond its notice period (i.e., not less than 30 days' prior notice), Defendants have failed to explain why the Court should cap damages at thirty days as opposed to some point in time thereafter.

Accordingly, for the foregoing reasons, the Court denies Defendants' Motion for Partial Summary Judgment as to the argument that Plaintiff's damages are limited to the time period ending thirty dates after October 29, 2009, the date on which it terminated Plaintiff.

**C.     Plaintiff's Cross-Motion for Partial Summary Judgment**

The Court denies Plaintiff's Cross-Motion for Partial Summary Judgment outright. The Court held in its prior Opinion that genuine disputes of material fact precluded summary judgment on the question whether Defendants had an objectively reasonable basis to fire Plaintiff. The additional discovery the Parties have conducted has, if anything, served to deepen the preexisting genuine disputes of material fact.

       Also, the Court declines to decide whether Plaintiff is entitled to an adverse inference because of Defendants' alleged spoliation of evidence. The Parties have not adequately briefed this question and it is more properly addressed through a motion in limine.

**D.      Plaintiff's Motion for Leave to File Sur-Reply**

       The Court denies Plaintiff's Motion for Leave to File Sur-Reply. Surreplies are disfavored in this jurisdiction and the proposed surreply addresses a side issue that is immaterial to the instant Opinion.

| | |
|---|---|
| January 2, 2013 | /s/ |
| Date | Alexander Williams, Jr. |
| | United States District Judge |