**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

KELLY JORGENSEN,

   Plaintiff,

      v.

UNITED COMMUNICATIONS GROUP
LIMITED PARTNERSHIP et al.,

   Defendants.

Civil Action No. 8:10-cv-00429-AW

## AMENDED MEMORANDUM OPINION

The instant case sounds in breach of contract. Pending before the Court are the following Motions: (1) Plaintiff's Motion in Limine; and (2) Plaintiff's Motion for Leave. The Court has carefully reviewed the record and deems a hearing unnecessary. For the following reasons, the Court **GRANTS IN PART** Plaintiff's Motion in Limine and **GRANTS** Plaintiff's Motion for Leave.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

This case involves a contract dispute between Mr. Kelly Jorgensen ("Plaintiff") and the following Defendants: United Communications Group Limited Partnership ("UCG") and CCB II, LLC ("CCB") ("Defendants"). According to Defendants, CCB is a wholly owned subsidiary of DecisionHealth, LLC ("DecisionHealth"), and UCG is the parent company of DecisionHealth. Plaintiff, for his part, was a principal of Custom Coding Books, LLC (Custom Coding). Custom Coding was sold to CCB on August 31, 2007. On the same day, and as part of the same

transaction, CCB and Plaintiff entered into a Consulting Agreement ("Agreement") under which CCB retained Plaintiff to provide professional services to CCB.

Generally, the Agreement entitled Plaintiff to a salary of $12,000-$14,000 a month, annual bonuses, a term bonus, and compensation upon termination. The Agreement was for a term of five years and generally provided that it could be terminated without cause upon 30 days' notice or for cause.

Defendants terminated Plaintiff for what, in their estimation, amounted to cause. Specifically, Defendants contended that (1) Plaintiff possessed, used, or planned to use confidential, proprietary information contained in "lead sheets"; (2) Plaintiff improperly booked orders; and (3) Plaintiff created a hostile work environment. This Court has already found that the allegation that Plaintiff created a hostile work environment was likely curable and, hence, held that this allegation did not constitute cause sufficient to justify Plaintiff's termination. The Court clarified in a later Memorandum Opinion that genuine factual disputes precluded summary judgment on whether allegations (1) and (2) constituted cause.

As discussed in the second Memorandum Opinion, Plaintiff argued that he was entitled to an adverse inference instruction based on Defendants' undisputed destruction of the lead sheets referenced above. The Court ruled that Plaintiff had not adequately briefed this question and stated that it would be more properly addressed through a motion in limine.

Correspondingly, on February 18, 2013, Plaintiff filed a Motion in Limine. Doc. No. 69. In this Motion, Plaintiff argues that Defendants willfully destroyed the lead sheets despite a duty to preserve them, thereby prejudicing his case and giving Defendants an unfair advantage. Based on his allegations of spoliation of evidence, Plaintiff requests the following relief:

1.     The entry of judgment in his favor on whether the allegation regarding the lead sheets constitutes cause; or

2.     The issuance of an Order precluding Defendants from offering evidence on issues related to the Plaintiff's alleged misuse of the lead sheets or from arguing that there was confidential information in the lead sheets; and/or

3.     The issuance of an adverse inference instruction permitting the Court to assume that the lead sheets would have been unfavorable to Defendants' theory of the case; and

4.     An award to Plaintiff of the attorney's fees and costs incurred in connection with his Motion in Limine.

A brief discussion of how Defendants came to the conclusion that Plaintiff possessed, used, or planned to use the lead sheets in an improper manner is necessary to understand the issues that Plaintiff's Motion in Limine presents. UCG purchased CodeCorrect in 2004 and subsequently sold CodeCorrect and all of its proprietary leads to Accuro Healthcare Solutions ("Accuro") in 2006. As a part of this transaction, CCB received a list of CodeCorrect customers with whom CCB could not do business. Gene Kraemer possessed the lead sheets. Kraemer is a onetime CCB employee who had earlier worked for CodeCorrect. The lead sheets consisted of twenty-two sheets containing potential customers for CodeCorrect. Kraemer alleges that the lead sheets were created no later than 2000 when he worked for CodeCorrect.

According to his affidavit, Kraemer found the lead sheets in his garage sometime after he became an employee of CCB. Kraemer further declares that he took the lead sheets to the office and asked Korey Jorgensen, Plaintiff's brother, what Jorgensen thought Kraemer should do with the lead sheets. According to Kraemer, Jorgensen responded that he would look into the possibility of loading the information into a sales database referred to as "Sales Force." Kraemer

also states that Plaintiff was not present during any of the discussions between Kraemer and Jorgensen.

On October 19, 2009, Aimee Mamich, a CCB salesperson, sent Doreen Bieryla, CEO of DecisionHealth, an email in which she stated that Jorgensen told various representatives of Defendants that he was going to "distribute the list of customers that [Kraemer] sold to while he was employed as a sales rep at Code Correct." Doc. No. 60-3 at 7. Mamich also stated that Plaintiff told her that he had "signed a non-compete," that it was illegal for him to work on that list, and suggested that Plaintiff was planning on using the lead sheets or aiding/abetting Kraemer's use of the lead sheets. *See id.* at 10.

Bieryla commenced an investigation. To that end, Bieryla called Plaintiff and told him that Bieryla had formed the belief that Plaintiff and Jorgensen planned to load the lead sheets into a sales database. According to Bieryla, Plaintiff "never denied having possession, or knowledge that other people in the office had possession" of the lead sheets. Doc. No. 78-4 ¶ 12.

Around this time, Bieryla spoke with Jorgensen about the lead sheets. According to Bieryla, Jorgensen asked what he should do with the lead sheets and suggested destroying them, to which Bieryla agreed. Bieryla states that she authorized the destruction of the lead sheets because she felt that it could be "potentially tremendously damaging" for Defendants if the sheets became available and/or were put into the sales database. *See* Doc. No. 78-9 at 6.

According to Bieryla, a few days after Jorgensen shredded the sheets, Plaintiff contacted Bieryla and stated that the list about which they spoke during their prior conversation was not the same as the lead sheets. *See* Doc. No. 78-3 at 30. Despite Plaintiff's apparent assertion that he did not have possession or knowledge of the lead sheets, Bieryla found it suspicious that Plaintiff

called her three days after their prior discussion "'out of the blue' to try to clarify something." Doc. No. 78 at 8 (citation omitted).

Against this backdrop, Plaintiff filed his Motion in Limine. Plaintiff also filed a Motion for Leave of Court to Share with Plaintiff the Unredacted Asset Purchase Agreement ("Motion for Leave"). Doc. No. 71. Through this Motion, Plaintiff asks the Court to allow Plaintiff to review an unredacted copy of a purchase agreement (Asset Agreement) between Defendants and Ingenix, Inc., through which Ingenix purchased certain assets from CCB, including assigned contracts, books and records, claims, and customer lists. Plaintiff moved to compel the production of the Asset Agreement based on the argument that Plaintiff had to review it himself to be able to calculate the amount of any bonus that Plaintiff may be entitled to if he prevails on his breach of contract claim. Magistrate Judge Schulze already ordered Defendants to produce an unredacted copy of the Asset Agreement pursuant to a counsels'-eyes-only confidentiality agreement. Although Plaintiff's counsel has reviewed the unredacted Asset Agreement, counsel asserts that he needs Plaintiff's assistance to understand certain aspects of the Asset Agreement.

Defendants filed a short response in opposition in which they raise two basic arguments. First, Defendants argue that Plaintiff's Motion for Leave is untimely. Second, Defendants argue that Ingenix has not given its consent for them to share the unredacted Asset Agreement with Plaintiff despite the fact that they have repeatedly requested Ingenix to do so. However, Defendants appear to assert that Ingenix will authorize them to share with Plaintiff an unredacted copy of the Asset Agreement upon court order. *See* Doc. No. 77 at 3.

The Court grants Plaintiff's Motion for Leave. The Court disagrees that the Motion is untimely because the Asset Agreement was already produced during discovery and Defendants are under a continuing obligation to supplement their discovery responses. Furthermore, the

Court's most recent Memorandum Opinion, which was issued in January 2013, may have changed the amount of damages that Plaintiff is potentially entitled to and/or the facts necessary to sustain a claim for damages. Additionally, Plaintiff filed his Motion for Leave in the following month. Beyond that, the Asset Agreement is clearly a relevant, discoverable document and Defendants have indicated a willingness to share the document with Plaintiff upon court order. As a result, the Court will order the production of an unredacted Asset Agreement for the review of Plaintiff and Plaintiff's counsel only.

Having resolved Plaintiff's Motion for Leave, the Court turns its attention to Plaintiff's Motion in Limine. Briefing on this Motion is complete.

## II.   ANALYSIS

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) (citation omitted).

A party seeking sanctions for spoliation must prove the following elements:

> (1) [T]he party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009) (citation omitted). "Should a court find that these above-described elements are met, then any sanctions imposed

must suit the purpose of leveling the evidentiary playing field and . . . the purpose of sanctioning the improper conduct." *Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 180 (D. Md. 2008) (citation and internal quotation marks omitted).

A.     **Whether Defendants Had an Obligation to Preserve the Lead Sheets**

"The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri*, 271 F.3d at 591 (citation omitted). Litigation need not be imminent for the duty to preserve to arise. *See Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1345–47 (Fed. Cir. 2011). Rather, the litigation need only be reasonably foreseeable. *See id.* "This is an objective standard, asking not whether the party in fact reasonably foresaw litigation, but whether a reasonable party in the same factual circumstances would have reasonably foreseen litigation." *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011).

In this case, a reasonable party could have foreseen that litigation involving the lead sheets would arise. The record evidence overwhelmingly indicates that potential legal ramifications could arise from use of the lead sheets. For instance, Stephen W. McVearry, general counsel for UCG, wrote Plaintiff that "UCG, DH, and Mr. Kraemer are all parties to various contractual obligations and covenants regarding the use and disclosure of CodeCorrect [lead sheets], the breach of which would expose UCG and DH to potential legal action and claims for damages." Doc. No. 78-12. Indeed, Bieryla, who authorized the destruction of the lead sheets, declares that Mamich told her that Plaintiff's alleged plan to use the lead sheets was illegal and could subject Defendants to "substantial liability." *See* Doc. 60-4 ¶ 3. The record

abounds with similar statements by representatives of Defendants. *See* Doc. No. 80 at 7–8 (citations omitted).

Defendants' primary counterargument is that they could not have foreseen potential litigation with Plaintiff. If anyone, Defendants assert that they could have foreseen litigation only with the entities to whom the confidential information pertained (e.g., Accuro). This is too narrow a gloss on the objective standard, which asks simply whether "a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri*, 271 F.3d at 591. Furthermore, the Court disagrees that a reasonable person could not have foreseen litigation between Defendants and Plaintiff. For instance, based on the record evidence, a reasonable person could have anticipated that Accuro would have joined Defendants and Plaintiff as defendants and that Defendants would have cross-claimed against Plaintiff. Alternatively, a reasonable party could have anticipated that Accuro would sue Defendants and that Defendants would have impleaded Plaintiff.  Accordingly, Defendants had an obligation to preserve the lead sheets.

**B.     Whether Defendants' Destruction of the Lead Sheets Was Accompanied by a Culpable State of Mind**

"In order to impose sanctions, the court must find evidence as to the second element, that any destruction or loss of documents took place with a culpable state of mind." *Sampson*, 251 F.R.D. at 179 (citation and internal quotation marks omitted). "The three possible states of mind that satisfy this requirement are bad faith destruction, gross negligence, and ordinary negligence." *Id.* (citation omitted). "Although, some courts require a showing of bad faith before imposing sanctions, the Fourth Circuit requires only a showing of fault, with the degree of fault impacting the severity of sanctions." *Id.* (citations omitted).  "An adverse inference about a

party's consciousness of the weakness of his case, however, cannot be drawn merely from his negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction." *Id.* at 181 (citation and internal quotation marks omitted). However, adverse inference instructions generally are not appropriate sanctions in bench trials. *See Thompson v. U.S. Dep't of Hous. and Urban Dev.*, 219 F.R.D. 93, 105 (D. Md. 2003).

In this case, the Court concludes that the destruction of the lead sheets took place with a culpable state of mind. Despite Defendants' understanding that various contracts protected the lead sheets, as well as their often stated concern that legal liability could arise from Plaintiff's and/or other employees' possession or use of the lead sheets, Bieryla authorized their destruction somewhat impetuously. Minimally, this conduct is negligent. The Court also concludes that the conduct was grossly negligent. There is no dispute that Bieryla ordered Jorgensen to destroy the lead sheets despite her professed serious concerns about their potential to subject Defendants to liability.

However, at least for the time being, the Court disagrees that Bieryla ordered the destruction of the lead sheets in bad faith. Jorgensen, Plaintiff's brother, allegedly first recommended the destruction of the lead sheets. Furthermore, Defendants fired Plaintiff after destroying the lead sheets, which may support the inference that Defendants' desire to avert legal liability to Accuro primarily motivated their decision to authorize their shredding. Additionally, Defendants allegedly based their decision to terminate Plaintiff on other factors (e.g., hostile work environment and improper booking). An ultimate answer to this question is best reserved for the impending trial, during which the Court will be better positioned to weigh the evidence and to evaluate the credibility of the witnesses. Therefore, although the evidence supports the

<035>

conclusion that Defendants had a culpable state of mind, Plaintiff has yet to present sufficient evidence to support the conclusion that Defendants destroyed the lead sheets in bad faith.

**C.      Whether the Destroyed Evidence Was Relevant**

"The test for relevance for the purposes of establishing the third element is somewhat more stringent than merely meeting the standard provided in Federal Rule of Evidence 401." *Sampson*, 251 F.R.D. at 179–80. "The Fourth Circuit describes the test for relevant evidence necessary to impose sanctions as that evidence which would naturally have been introduced into evidence." *Id.* at 180 (citation and internal quotation marks omitted).

In this case, the Court concludes that the lead sheets would naturally have been introduced into evidence. The lead sheets are perhaps the best evidence of Defendants' contention that the sheets contained confidential, proprietary information, a claim Defendants have repeated throughout this litigation. Likewise, Plaintiff naturally would want to review the lead sheets to ascertain if they contained confidential, proprietary information. If they did not, Plaintiff obviously would seek their admission into evidence as such a fact would undercut one of Defendants' key contentions.

Defendants respond that the lead sheets lack relevance because Defendants did not base their decision to fire Plaintiff on the content of the lead sheets per se. Rather, Defendants assert that they reasonably believed that the lead sheets contained confidential information and that such a showing suffices to show they had adequate cause to terminate Plaintiff. Broadly, the Court agrees that a party could have a reasonable belief that a document contains confidential information even when it does not. The Court disagrees, however, that the content of the sheets is irrelevant to the determination whether the employer's belief that a document contains confidential information is reasonable. Other things being equal, an employer's belief that a

document contains confidential information would be more reasonable if the sheets actually contained confidential information, especially if the employer had firsthand knowledge of the contents of the sheets. Thus, a showing that the sheets lacked confidential information and/or that Defendants lacked awareness of the contents of the sheets naturally would help Plaintiff establish facts tending to support his claim. Here, Defendants concede that they never reviewed the lead sheets. Doc. No. 56-16 ¶ 22. And, given the destruction of the lead sheets, Plaintiff does not have an opportunity to explore whether they in fact contained confidential information. Consequently, the lead sheets are relevant for spoliation purposes.

**D.      Whether Defendants' Destruction of the Lead Sheets Prejudiced Plaintiff**

"Spoliation of evidence causes prejudice when, as a result of the spoliation, the party claiming spoliation cannot present evidence essential to its underlying claim." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 532 (D. Md. 2010) (citation and internal quotation marks omitted). "Generally, courts find prejudice where a party's ability to present its case or to defend is compromised." *Id.* (citation omitted).

In this case, Defendants' destruction of the lead sheets has compromised Plaintiff's ability to defend his case inasmuch as the lead sheets might have shown that Defendants' concerns about whether the sheets were covered under various confidentiality covenants and/or contained confidential, proprietary information were unfounded. However, there is no guarantee that this situation would have come to pass, and some evidence in the record arguably supports the inference that the sheets contained such information. Therefore, although Defendants' actions have prejudiced Plaintiff, the prejudice is not severe.

**E.     Remedy**

Plaintiff has requested several remedies due to Defendants' spoliation of the lead sheets. At this time, the Court denies Plaintiff's request for the entry of judgment in his favor on whether the allegation regarding the lead sheets constitutes cause. As discussed, as a technical matter, Defendant does not have to prove that the lead sheets contained confidential, proprietary information to show that it had an objectively reasonable basis for believing that the lead sheets contained such information and that Plaintiff was privy to a plan to misuse them. Although it presumably will be much harder for Defendants to make this showing without entering the lists into evidence, drawing all reasonable inferences in Defendants' favor, a fact-finder could make this determination. Furthermore, further factual development, including an assessment of the credibility of witnesses, would likely be necessary before issuing such an extreme sanction. Accordingly, an ultimate resolution of this question is best reserved for trial. For similar reasons, the Court denies Plaintiff's second prayer for relief, namely, the issuance of an Order precluding Defendants from offering evidence on issues related to Plaintiff's alleged misuse of the lead sheets. This request is overbroad and seems to be a backdoor way of arguing that the Court should enter judgment on the issue whether Plaintiff's alleged misuse of the lead sheets constituted cause.

As to Plaintiff's next request for relief, however, the Court deems it appropriate to preclude Defendants from arguing that the lead sheets contained confidential, proprietary information. Failing to do so would be manifestly unfair considering Defendants' culpable destruction of the sheets and the fact that none of the relevant decision-makers has even seen the sheets. *See, e.g.*, Doc. No. 56-16 ¶ 22.[1]

---

[1] Nor is it clear that Defendants otherwise would have been able to make such an argument. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding

The Court declines to issue an adverse inference instruction permitting the Court to assume that the lead sheets would have been unfavorable to Defendants' theory of the case. For one, Plaintiff has yet to make a showing that Defendants' conduct arises to the level of bad faith. Second, an adverse inference instruction would be, to say the least, unwieldy considering that the Court will hold a bench trial.

Finally, the Court denies Plaintiff's request for the attorney's fees and costs incurred in connection with his Motion in Limine. The Court invited Plaintiff to file the Motion in Limine and Plaintiff did not receive all the relief he requested in said Motion.

***

Some final remarks are in order. The Court now has had another opportunity to review the record. Although, drawing all reasonable inferences in Defendants' favor, the record contains sufficient evidence for a fact-finder to determine that Defendants had an objectively reasonable belief that Plaintiff had improperly possessed or used confidential information, the instant ruling will likely significantly encumber Defendants' ability to make this showing. Ultimately, then, Defendants' argument that they had an objectively reasonable basis to fire Plaintiff may turn on whether they can substantiate the sole allegation that Plaintiff improperly booked orders, an allegation for which Defendants do not yet appear to have submitted substantial evidence. All the same, the Court has already held that genuine factual disputes exist for trial and need not revisit that ruling now considering, inter alia, the imminency of trial.

---

that the witness has personal knowledge of the matter."); Fed. R. Evid. 1002 ("An original writing . . . is required in order to prove its content unless these rules or a federal statute provides otherwise.").

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Leave and **GRANTS IN PART** Plaintiff's Motion in Limine. A separate Order follows.

|  April 19, 2013  |  /s/  |
| :---: | :---: |
| Date | Alexander Williams, Jr. |
|  | United States District Judge |